UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLIE GARRIGAN,

                            Plaintiff,

     -against-

RUBY TUESDAY, INC., JEFF GABRIEL,
CHRISTOPHER EDWARDS, and CHUCK
MCGUFF,

                            Defendants.



MEMORANDUM DECISION
AND ORDER

13 Civ. 1196 (GBD)

GEORGE B. DANIELS, United States District Judge:

    Plaintiff Kellie Garrigan brings this action against her former employer, Ruby Tuesday, Inc., and three of her former supervisors for violations of Title VII of the Civil Rights Act of 1964 (as amended, 42 U.S.C. §§ 2000e *et seq.*) and the New York City administrative code. She alleges that after she broke up with her boyfriend (who was also a manager at her employer) Defendants discriminated against her because of her sex, and retaliated against her after she complained of the discrimination she faced. Plaintiff's complaint is dismissed because it fails to state any cognizable claim under Title VII. Because the Court dismisses the Title VII claims at such an early stage, it declines to consider or exercise supplemental jurisdiction over the City claims, which are dismissed without prejudice.

## Background

    Plaintiff has worked at various Ruby Tuesday restaurant locations as a server since February, 2010. Compl. ¶¶ 19, 26, 29. She suffers from "chronic pancreatitis with genetic predisposition," which has led to numerous and sometimes prolonged hospital stays. *Id.* ¶ 23, 25.

The events that led to this lawsuit began around October 2011 when she was admitted to the hospital because of this medical condition. *Id.* ¶ 23. While she was in the hospital one of her "managers," who is not a defendant in this action, "awkwardly" brought her flowers and told her that "he had feelings for her." *Id.* ¶ 34. Plaintiff contends that while she was in a hospitalized, weakened state, this manager, Josh Palmer, convinced her to move in with him (and his roommate, Defendant Christopher Edwards, another "manager" at Ruby Tuesday) after she was released in November 2011. *Id.* ¶ 36.

Less than two months after she was released, she suffered a relapse and was readmitted to the hospital in January 2012. *Id.* ¶ 37. While there, on January 31, 2012, she alleges that Palmer suddenly proposed marriage to her, but then the very next day ended the relationship. He told her that he had moved all of her personal belongings into storage and left. *Id.* ¶¶ 39-40. Palmer then, allegedly, had another change of heart and started to call her again, expressing that he had made a mistake and that he wanted her back. *Id.* ¶ 41. Plaintiff, while still in the hospital, told him to never call her again. *Id.* ¶ 42. There is no allegation in the complaint that Palmer continued to pursue the relationship after she told him to never call her again.

It was after definitively ending the relationship with Palmer that Plaintiff alleges that Edwards began to retaliate against her. She alleges that Edwards began sending her "hateful text messages." *Id.* ¶ 43. The text messages that she specifically alleges told her that she was not really as sick as she thought she was and that "the machines [keeping her alive] didn't do anything anyways." *Id.* She claims that she reported these messages to the director of human resources, Defendant Chuck McGuff, but that he took no action. *Id.* ¶¶ 45, 46. She does not allege that she told McGuff that she thought that Edwards did this because she rejected Palmer's romantic interests.

2

She further alleges that upon returning to work "everyone was treating her completely differently than they did before she became sick." *Id.* ¶ 50. In fact, she alleges that most of her supervisors and co-workers were "completely ignoring her." *Id.* She alleges that Edwards continued to spread "vicious rumors" about her, including telling employees that her brother Chris, who had passed away from the same disease, never existed. *Id.* ¶¶ 51, 52. She complained to Defendant Jeff Gabriel, the general manager, this time indicating that she thought that Edwards was "retaliating against her for rejecting Mr. Palmer's sexual advances by spreading vicious rumors about her." *Id.* ¶ 52. Defendant Gabriel took no action in response to Plaintiff's complaint. Distraught over the rumors that Edwards had allegedly spread about her health, she "felt she had no choice but to resign from her position," and quit effective May 2, 2012. *Id.* ¶¶ 56, 61.

**Plaintiff Fails to State a Title VII Claim**

At oral argument, Plaintiff's attorney represented that he was not proceeding under any theory of hostile work environment, and was dismissing all claims against Gabriel and McGuff as defendants. He stated that Plaintiff's only Title VII claims were proceeding under theories of *quid pro quo* discrimination and retaliation.

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint has facial plausibility when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Although a plaintiff is not required to plead a

prima facie case of discrimination in employment cases, her claims must still be facially plausible. *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006).

Title VII prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). A Title VII theory of disparate treatment via *quid pro quo* discrimination requires a showing of an adverse employment action "either because of gender or because a sexual advance was made by a supervisor and rejected." *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir. 1992) ("Under a 'quid pro quo' theory, the plaintiff-employee must establish that she was denied an economic benefit either because of gender or because a sexual advance was made by a supervisor and rejected by her."). To be an adverse employment action, there must be a link between the discrimination and some "tangible job benefits" such as compensation, terms, conditions, or privileges of employment. *Karibian v. Columbia Univ.*, 14 F.3d 773, 778 (2d Cir. 1994).

Plaintiff's claim fails because it does not demonstrate any actionable *quid* or *quo*. It is well established in this Circuit that the termination of a voluntary romantic relationship cannot form the basis of a sex discrimination suit under Title VII. *DeCintio v. Westchester County Med. Ctr.*, 807 F.2d 304, 306 (2d Cir. 1986). Where there is "no evidence that the spurned supervisor made any [further] sexual advances" following the breakup or engaged in any additional efforts to resume the relationship, "there is no actionable Title VII violation." *Novak v. Waterfront Comm'n of N.Y. Harbor*, No. 10 Civ. 9694, 2013 U.S. Dist. LEXIS 30130 at *17 (S.D.N.Y. Mar. 1, 2013). A sex discrimination suit is not "based on sex" within the meaning of Title VII when it arises from a failed relationship because it is not fueled by gender-based hostility. *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415 (E.D.N.Y. 2012). Here, there is nothing in the complaint to suggest that Palmer made any sexual advances after Plaintiff definitively broke off their relationship. Plaintiff never alleges that Palmer, or anybody else, told her implicitly or explicitly that if she did not provide sexual

4

favors or rekindle their romantic relationship, that he would make her life difficult at work. There are no factual allegations in the complaint of any actionable *quid*.

Even if she had plausibly alleged a *quid*, the *quo* that Plaintiff alleges—that Edwards spread rumors at work that she had never been sick, never been in the hospital, and never had a brother—is insufficient to state a Title VII violation. In order to allege an actionable *quo*, Plaintiff must allege that she suffered a "tangible employment action," some economic injury, after she rebuffed Palmer. *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004). This means that Plaintiff must allege that she suffered a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). Plaintiff only alleges that Edwards (not ex-boyfriend Palmer) began to spread rumors about her health, and her co-workers began to ignore her. This falls far short of the required standard. She does not allege that Edwards, or anybody else at Ruby Tuesday, altered any of the usual conditions of her employment.[1]

In order to show retaliation, Plaintiff must demonstrate that "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).

---

[1] Plaintiff casts her decision to quit her job as a "constructive discharge." A constructive discharge occurs when an employer "intentionally creates a work atmosphere so [objectively] intolerable that [the plaintiff] is forced to quit involuntarily." *Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003). The Supreme Court has described these necessary conditions as an "aggravated case of sexual harassment or hostile work environment." *Pa. State Police v. Suders*, 542 U.S. 129, 146 (2004). This "demanding" standard requires the Plaintiff's work environment to be more than "difficult or unpleasant." *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993). Plaintiff points to no act besides the alleged rumors that Edwards spread that might even have the potential to create these conditions. Plaintiff conceded that her work environment did not amount to a hostile one, and rightly so. The only allegation she has that Edwards's rumors affected her work environment was that most of her co-workers began to ignore her. Compl. ¶ 50. While this may have made her environment unpleasant, Title VII requires more than simply getting the cold shoulder from one's co-workers in order to complain of constructive discharge.

A plaintiff engages in protected activity when she opposes an employment practice made unlawful by Title VII. *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006). According to Plaintiff, her "protected activity" was ending the relationship with Palmer, not her complaint to Gabriel about Edwards's retaliatory rumors. Because she rejected Palmer's romantic advances, Plaintiff contends that Edwards retaliated against her by spreading rumors.[2] Compl. ¶ 52. While cases in this circuit are not uniform on the issue, rejecting unwanted sexual advances (even assuming that Palmer made any, which Plaintiff does not allege), does not constitute actionable protected activity. *See Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 189 (E.D.N.Y. 2012) (acknowledging the split of authority but taking the view that "[i]f resisting the advances of a harasser constitutes a protected activity, then every harassment claim would automatically state a retaliation claim as well.") (internal quotations omitted); *accord Del Castillo v. Pathmark Stores, 941 F. Supp. 437*, 439 (S.D.N.Y. 1996); *Raeman v. County of Ont.*, No. 12 Civ. 6009, 2013 U.S. Dist. LEXIS 35008 at *24-27 (W.D.N.Y. Mar. 11, 2013); *Doe v. Univ. of Connecticut*, No. 09 Civ. 1071, 2012 U.S. Dist. LEXIS 153467 at *9-10 (D. Conn. 2012). There is complete overlap between Plaintiff's *quid pro quo* discrimination claim and her retaliation claim here. Rejecting Palmer cannot serve as the basis for both claims.

Plaintiff again fails to allege that she suffered any materially adverse employment action after she broke up with Palmer. Conduct that has been deemed sufficiently disadvantageous to constitute an adverse employment action include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits,

---

[2] Plaintiff does allege that she informed her employer that "Edwards was retaliating against her for rejecting Mr. Palmer's sexual advances by spreading vicious rumors about her." Compl. ¶ 52. This could arguably serve as protected activity if, for example, her employer had demoted or fired her after she brought this to its attention. But she does not allege that Ruby Tuesday took any adverse action against her at all after she complained—the only potential adverse action she alleges are the rumors that Edwards had already spread. Thus this complaint to her employer cannot serve as the basis for any retaliation claim because she cannot plausibly show that she suffered any materially adverse action after she made this complaint, nor can she show any causal connection between the complaint and any adverse action.

significantly diminished material responsibilities, or other indices. . . unique to a particular situation." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (ellipsis in original) (citations omitted). "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citation and internal quotation marks omitted). Plaintiff's co-workers ignoring her on account of Edwards's alleged rumors does not constitute such a severe change in her working conditions.

### The Court Declines to Exercise Supplemental Jurisdiction over the City Claims

Plaintiff seeks to bring several claims under the New York City administrative code as well. District courts may decline to exercise supplemental jurisdiction over such claims if "the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3). This decision is "purely discretionary." *Oneida Indian Nation v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir. 2011) (*citing Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)). In considering whether to exercise this discretion, courts in this Circuit must weigh considerations of "judicial economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004). In the typical case where all claims over which the district court had original jurisdiction are eliminated before trial (such as on a motion to dismiss), the balance of factors usually will weigh toward declining to exercise jurisdiction over the remaining claims. *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (*citing Carnegie-Mellon University v. Cohill*, 484 U.S. 343. 350 (1988)). As this Court is dismissing all federal Title VII claims on a motion to dismiss—well before any substantial litigation has begin—it declines to exercise supplemental jurisdiction over the remaining City code claims.

7

## Conclusion

For these reasons, as well as those stated on the record at oral argument on July 11, 2013, Ruby Tuesday's motion to dismiss (ECF No. 16) is GRANTED. Plaintiff's Title VII claims are dismissed. The Court declines to exercise supplemental jurisdiction over the claims that are based on the City Administrative Code. The City claims are dismissed without prejudice. The Clerk of the Court is directed to close the Individual Defendants' motion at ECF No. 18 and this case.

Dated: July 30, 2013
     New York, New York

SO ORDERED

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge